# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**TIMOTHY MYERS,**

    **Plaintiff,**

**v.**                                                    Case No. 8:12-cv-708-T-30MAP

**MYERS PRINTING, INC.** *et al.*,

    **Defendants.**
_____/

## ORDER

THIS CAUSE comes before the Court upon Plaintiff's Unopposed Motion for Relief from the Court's A.D.A. Scheduling Order (Dkt. 9). The Court, upon review of the motion, and being otherwise advised of the premises, concludes that the motion should be denied.

## DISCUSSION

This is an action for declaratory and injunctive relief under Title III of the Americans with Disabilities Act ("ADA"). In Title III ADA cases, the Court, under Fed. R. Civ. P. 16, issues an ADA Scheduling Order within a few days of the filing of the complaint. The purpose of the ADA Order is to encourage the parties to an early resolution of the case, without incurring unnecessary fees and costs. In the Court's experience (after several years of utilizing the ADA Order), the early and focused exchange of information more than often

results in a resolution of the ADA plaintiff's claims.[1] Simply put, if a defendant is placed on notice of the architectural barriers, it typically resolves the issue before trial.

On April 3, 2012, Plaintiff filed the instant action. On April 5, 2012, the Court issued its ADA Scheduling Order (Dkt. 3) (the "ADA Order"). The ADA Order, among other things, requires Plaintiff to file answers to Court interrogatories within thirty days from the date of the ADA Order identifying all claimed ADA violations. The ADA Order also requires Plaintiff to provide Defendant with a copy of any existing expert report upon which Plaintiff intends to rely in support of his claims. The ADA Order requires Defendant to serve Plaintiff with a written response, including any expert report upon which Defendant intends to rely, within thirty days from the date of receipt of Plaintiff's report. Within thirty days following the submission of Defendant's written response, the ADA Order directs the parties to mediate the dispute before a mediator of their choice. The ADA Order states that until further order of the Court, discovery is stayed, and either party, "for good cause shown," may move to alter the scheduling order.

If settlement is not achieved, the ADA Order requires the parties to promptly notify the Court and the Court will issue a supplemental case management order. The ADA Order also schedules a status conference about ninety days after mediation so the Court may hear from the parties about any settlement difficulties.

This case is at issue upon Plaintiff's request for relief from the ADA Order. Plaintiff contends that the ADA Order serves only to favor Defendants' position in the litigation.

---

[1] Indeed, Plaintiff's counsel is well aware of the efficiency of the Court's ADA Order as he has resolved countless Title III ADA cases before this Court during the pendency of the ADA Order.

Plaintiff also argues that the ADA Order violates his constitutional rights. Plaintiff's arguments are without merit and ignore the Court's broad discretion under Rule 16 to issue scheduling orders and manage its cases consistent with the just, speedy, and inexpensive determination of the case.

Rule 16 "gives the trial court broad discretion in conducting pre-trial procedures in order to narrow the issues, reduce the field of fact controversy for resolution, and to simplify the mechanics of the offer and receipt of evidence." *Pacific Indem. Co. v. Broward Cnty*, 465 F.2d 99, 103 (5th Cir. 1972). Indeed, "[t]he Trial Court has, and must have, of course, a wide and flexible discretion in the daily guidance of a case through the preparatory stages looking toward the climax of a trial. And its orders whether under [Rule] 16 and local rules for pretrial or under discovery mechanisms such as [Rule] 34, or others, must be obeyed in good faith until set aside." *Mitchell v. Johnson*, 274 F.2d 394, 401 (5th Cir. 1960). The Court's ADA Order, which it issues in all of its Title III ADA cases, serves the purpose of narrowing the issues and encouraging a resolution without undue litigation. This is particularly important during these times, when the Court's docket is inundated with Title III ADA cases.

The Court finds the majority of Plaintiff's arguments curious. For example, the interrogatories Plaintiff is directed to answer are not burdensome on Plaintiff. To the contrary, the questions direct Plaintiff to answer questions that he would have to know in order to file his complaint in good faith, such as: the date and time that he visited the facility and the architectural barriers he personally observed or experienced.

Plaintiff's argument that Defendants do not have to do anything is also baffling: the ADA Order directs Defendants to serve Plaintiff with their response, including any expert report, after they receive Plaintiff's interrogatory answers and report (assuming there is an existing report). And the Court does not understand Plaintiff's confusion with respect to any expert report. Contrary to Plaintiff's representations, the ADA Order requires Plaintiff to serve Defendant with any "existing" expert report. If Plaintiff does not have one at that time, the ADA Order does not require that one be obtained. Similarly, Defendant is directed to respond with any expert report it intends to rely upon. Again, this is assuming that Plaintiff serves Defendant with an existing report.

The ADA Order also directs the parties to mediate the case after this exchange of information and stays all discovery in the meantime so that the parties can focus on these initial steps. The ADA Order makes it clear that if the parties are unable to settle the case, the Court will issue a supplemental case management order. Clearly, a supplemental case management order would include the remaining discovery deadlines as stated in Rule 16.

Plaintiff argues that the ADA Order unnecessarily delays his case. To the contrary, the ADA Order requires the parties to immediately focus on the salient issue, that is, the ADA architectural barriers Plaintiff observed and/or experienced and Defendants' response to same. Also, assuming the parties comply with the deadlines set forth in the ADA Order,[2] the exchange of information and the parties' mediation are completed within approximately

---

[2] Plaintiff's counsel's arguments with respect to delay and "idle" time are particularly perplexing given the numerous motions for extensions of the ADA Order's deadlines that he typically files in other ADA cases before this Court and the other courts in this district.

ninety days from the date the Court issues the ADA Order. Thus, the ADA Order has the possibility of resulting in complete settlement of the case within approximately ninety days from the date Plaintiff files his case, without either party incurring unnecessary fees and costs. Notably, under Rule 16, a district court does not even have to issue a scheduling order until "the earlier of 120 days after any defendant has been served with the complaint or 90 days after any defendant has appeared." Here, the case is potentially resolved prior to that time. And, if it is not resolved by that time, the Court will issue a supplemental case management order and lift the discovery stay.

In sum, the ADA Order encourages an early and efficient resolution of a plaintiff's claim under Title III of the ADA. And Rule 16 provides the Court with <u>broad</u> discretion to manage its cases and achieve a just and timely resolution.

It is therefore ORDERED AND ADJUDGED that Plaintiff's Unopposed Motion for Relief from the Court's A.D.A. Scheduling Order (Dkt. 9) is DENIED.

**DONE** and **ORDERED** in Tampa, Florida on May 1, 2012.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Even\2012\12-cv-708.mtreliefADA9.frm